UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| USA,<br>    Plaintiff,<br> v.<br>LIANG CHEN,<br>    Defendant. | Case No.  17-cr-00603-BLF-1<br><br>**ORDER DENYING DEFENDANTS' MOTION TO DISMISS AND GRANTING BILL OF PARTICULARS**<br><br>[Re: ECF 111] |

Criminal defendants have a constitutional right to be informed of the nature of the charges against them. U.S. Const. Amend. VI. It is this right that animates the challenge brought by Defendants Liang Chen, Donald Olgado, Robert Ewald, and Wei-Yung Hsu (collectively "Defendants") against the Indictment prepared by the United States. Before the Court is Defendants' motion to dismiss, or, in the alternative, for a bill of particulars. *See* Mot., ECF 111. The Government opposes this motion. *See* Opp'n, ECF 117. Defendants filed a reply brief, *see* ECF 122, and the Court heard oral argument on October 13, 2020. For the reasons articulated below, the Court DENIES Defendants' motion to dismiss and GRANTS a bill of particulars.

**I.   BACKGROUND**

The Government has charged all four Defendants with one count of conspiracy to commit theft of trade secrets, 18 U.S.C. § 1832(a)(5), and eleven counts of possession of stolen trade secrets, and aiding and abetting, 18 USC §§ 1832(a)(2), (3). Indictment ¶¶ 11–20, ECF 1. All four Defendants are former employees of Applied Materials, Inc. ("Applied"), which supplied equipment, services, and software to enable the manufacturing of semiconductor chips for electronics, flat panel displays for computers, smartphones and televisions, and solar products. *Id.* ¶¶ 1–5. The technology at issue supported the high-volume manufacturing of semiconductor

1   wafers to be used in lighting and electronic devices, such as flatscreen televisions and smart
2   phones. *Id.* ¶ 6. Metal Organic Chemical Vapor Deposition ("MOCVD") was, as the Government
3   describes it, "a highly complex process for growing crystalline layers by spraying different
4   chemicals on wafers." *Id.* ¶ 7. Applied developed a multichamber MOCVD system with high-
5   yield wafer capacity. *Id.* According to the Government, the trade secrets contained in this
6   MOCVD technology included the MOCVD LED [light emitting diodes] Customer Tool and
7   Applied's Bills of Material ("BOMs"), which contained the exact materials used to create the
8   MOCVD tool and how the materials were related to one another in relation to the design,
9   operations, and throughput results of the MOCVD LED customer tool. *Id.* ¶ 10. The MOCVD tool
10  itself contained CAD drawings, housed in a confidential database called Teamcenter, and only
11  authorized MOCVD LED team members had access to the drawings, and limitations were placed
12  on the use and copying of those drawings. *Id.*

13  The Government alleges that a conspiracy among Defendants began in approximately
14  September 2012 and continued through approximately December 2012. Indictment ¶ 12. The
15  Government alleges that Defendants, while Applied employees, conspired to steal Applied's
16  technology and use it in a competing company called Envision. *Id.* ¶ 13. The Indictment recites
17  sixteen overt acts. *Id.* ¶18. In addition to the conspiracy, the Government alleges that the
18  Defendants knowingly received and possessed eleven specified Applied trade secrets, with the
19  Defendants knowing the secrets were stolen and intending and knowing that the offense would
20  injure Applied. *Id.* 20. The Indictment includes a chart that lists eleven trade secrets, identified by
21  a Teamcenter Item ID number, an Applied part number, and a short description. *Id.*

22  **II.   LEGAL STANDARD**

23  An indictment must meet the requirements of the Due Process Clause and Federal Rule of
24  Criminal Procedure 7. *United States v. Zhou*, 678 F.3d 1110, 1113 (9th Cir. 2012). Rule 7 states
25  that an indictment must be a "plain, concise, and definite written statement of the essential facts
26  constituting the offense charged." Fed. R. Crim. P. 7(c)(1). An indictment satisfies due process if
27  it "first, contains the elements of the offense charged and fairly informs a defendant of the charge
28  against which he must defend, and, second, enables him to plead an acquittal or conviction in bar

of future prosecutions for the same offense." *Zhou*, 678 F.3d at 1113 (quoting *Hamling v. United States*, 418 U.S. 87, 117 (1974)). "An indictment is sufficient if it contains the elements of the charged crime in adequate detail to inform the defendant of the charge and to enable him to plead double jeopardy." *Zhou*, 678 F.3d at 1113 (quoting *United States v. Buckley*, 689 F.2d 893, 896 (9th Cir. 1982)). Two "corollary purposes" of an indictment are 1) "to ensure that the defendants are being prosecuted on the basis of the facts presented to the grand jury," and 2) "to allow the court to determine the sufficiency of the indictment." *Buckley*, 689 F.2d at 896.

A defendant may move to dismiss an indictment for reasons including "lack of specificity" and "failure to state an offense," as Defendants have here. Fed. R. Crim. P. 12(b)(3)(B)(iii), (v). "In ruling on a pre-trial motion to dismiss an indictment for failure to state an offense, the district court is bound by the four corners of the indictment." *United States v. Boren*, 278 F.3d 911, 914 (9th Cir. 2002).

### III. DISCUSSION

Defendants raise several arguments in support of their contention that the Indictment lacks the necessary specificity to allow them to properly prepare for trial and fails to state an offense in Counts Two through Twelve. The Court will address the arguments against the conspiracy charge and the possession charges separately.

#### A. Count One: Conspiracy to Commit Theft of Trade Secrets, 118 U.S.C. § 1832(a)(5)

Defendants vigorously argue that the word "including" in paragraph 10 of the Indictment, which generally describes the categories of trade secrets contained in Applied's MOCVD technology, renders the Indictment constitutionally deficient. Mot. 7–15. Specifically, Defendants argue that the open-ended nature of the word "including" prevents them from receiving sufficient notice to prepare their defense and to plead double jeopardy in any future prosecution. *Id.* 7–13. Additionally, the open-ended language, Defendants argue, fails to ensure that the Defendants are only prosecuted on facts presented to the Grand Jury. *Id.* 13–15.

The Government responds that, as a threshold matter, Defendants' arguments about the use of the word "including" in paragraph 10 only apply to Count One, since Counts Two through

3

Twelve, which do incorporate paragraph 10 by reference, narrow the alleged trade secrets for those counts to those identified in the table contained in paragraph 20. Opp'n 8. Additionally, at the October 13, 2020 hearing, the Government confirmed it is willing to strike the word "including" from paragraph 10 of the Indictment. Tr., 28:24-29:15, ECF 131. The Court will take the Government up on its offer and order the word "including" in paragraph 10 be stricken from the Indictment.

Defendants acknowledge that the Government does not have to prove the existence of any trade secret in order to secure a conviction on the conspiracy count. Mot 12. Rather the Government must prove beyond a reasonable doubt that Defendants reasonably believed certain information constituted trade secrets. *United States v. Liew*, 856 F.3d 585, 600 (9th Cir. 2017), *United States v. Nosal*, 844 F.3d 1024, 1044-45 (9th Cir. 2016).

In *Nosal*, the Ninth Circuit held that a conspiracy to steal trade secrets conviction may be upheld "even where the object of the crime was not a legal possibility." *Nosal*, 944 F.3d at 1045. The jury instruction correctly stated the law: "the government need not prove the existence of actual trade secrets and that Defendant knew that the information in question was a trade secret. However, the government must prove that Defendant firmly believed that certain information constituted trade secrets." *Id.* at 1044. *Liew* applied *Nosal* and affirmed that the government does not have to prove the existence of any trade secrets, just that a defendant believed that certain information was a trade secret, in order to secure a conspiracy conviction. *Liew*, 856 F.3d at 600.

Still, Defendants argue that they need clarity on what "certain information" the Government intends to introduce to show that Defendants believed that certain information was a trade secret. Reply 4. The Court finds that the Government has provided the required specificity. The Ninth Circuit requires that an indictment for conspiracy provide the defendant with the offense he is charged with and the methods by which the alleged illegal activities were made to occur. *United States v. Forrester*, 616 F.3d 929, 941 (9th Cir. 2010); *United States v. Inryco, Inc.*, 642 F.2d 290, 294 (9th Cir. 1981). Here, the Government has done that. The Government alleges that Defendant Olgado downloaded over 16,000 CAD drawings containing Applied's MOCVD technology from the confidential internal engineering Teamcenter database. Indictment ¶ 15. The

4

1   Government also details numerous emails sent between Defendants that allegedly demonstrate that
2   they knew the information they had taken constituted trade secrets. *Id.* ¶ 18.

3   Accordingly, the Court will STRIKE the word "including" from paragraph 10 of the
4   Indictment and DENY Defendants' motion to dismiss Count One.

**B. Counts Two Through Twelve: Possession of Stolen Trade Secrets, and Aiding and Abetting, 18 USC §§ 1832(a)(2), (3)**

Defendants argue that the table in the Indictment containing eleven trade secrets that identifies a Teamcenter Item ID, an Applied part number, and a description without explanation fails to provide sufficient notice and fails to state an offense. Mot. 15–19. Specifically, Defendants argue that the Indictment doesn't specify whether the alleged trade secrets are the machine parts or the CAD drawings for the machine parts, and this ambiguity means the Indictment fails to provide specific notice. *Id.* 15. To the extent the Indictment alleges the trade secrets to be machine parts, the Indictment fails to state an offense because physical products cannot be trade secrets. *Id.* 16. Defendants also argue that the vague and unclear description of the alleged trade secrets in the Indictment coupled with correspondence from the Government which Defendants interpret as adding hundreds of new trade secrets appears to be opening the door for the Government to unconstitutionally constructively amend the Indictment at trial. This tactic has made it impossible to know whether the Grand Jury would have indicted for these other trade secrets. Mot. 19. Finally, Defendants argue that the Indictment fails to connect Teamcenter with any BOM, and the Government did not present any BOM as a trade secret to the Grand Jury, so it should be foreclosed from presenting a BOM as a trade secret at trial. Reply 5–6, 8–9.

The Government responds that the Indictment does not allege that the physical parts are the trade secrets but rather the CAD design files and BOM information that is contained at the specified Teamcenter Item ID. Opp'n 13–14. Specifically, the Government points to language in the Indictment that specifies that the eleven trade secrets "were related to and included in products to be produced for and placed in interstate and foreign commerce." *Id.* 14 (quoting Indictment, ¶ 20). The Government also argues that any constructive amendment concerns or arguments are premature at this time since that evaluation necessarily entails comparing the trial evidence to the

5

evidence that the Grand Jury relied upon and determining any differences, *see United States v. Helstoski*, 576 F.2d 511, 518 (3d Cir. 1978), *aff'd* 442 U.S. 477 (1979). Opp'n 15. The Government cites Grand Jury testimony in support of the contention that the CAD drawings constitute the eleven trade secrets. *Id.* 16–18. Finally, the Government argues that it is not limited at trial to evidence that was shown to a grand jury, *see Buckley*, 689 F.2d at 897, and not required to describe to Defendants all of its evidence. Opp'n 19–20.

These arguments address two separate issues the Court must consider. First, the Court must consider whether the Indictment satisfies constitutional requirements. For that consideration, the Court is limited to the four corners of the Indictment. *Boren*, 278 F.3d at 914. If the Indictment survives, the Court may consider whether Defendants are entitled to a bill of particulars. *United States v. Giese*, 597 F.2d 1170, 1180 (9th Cir. 1979).

The Court is satisfied that the Indictment properly identifies the CAD drawings at the specified Teamcenter Item ID numbers as the trade secrets, and this is supported by the Grand Jury testimony. The Indictment specifies that "CAD drawings were housed in a confidential database called Teamcenter." Indictment ¶ 10a. "Only authorized MOCVD LED team members had access to the drawings, and limitations were placed on the use and copying of those drawings." *Id.* The Indictment further details, "[f]rom an unknown date to approximately December 7, 2012, Olgado, while still employed by Applied, downloaded over 16,000 CAD drawings containing Applied's MOCVD technology from Applied's confidential internal engineering database know as Teamcenter." *Id.* ¶ 15. Those paragraphs were incorporated into the section of the Indictment outlining Counts Two through Twelve. *Id.* ¶ 19.[1] The Court is also satisfied that the Grand Jury issued the Indictment against Defendants alleging that the CAD drawing were trade secrets, which is based on the testimony and exhibits introduced by FBI special agent Frank Reid. *See* Ex. 3, Grand Jury Test 165:8- 172:25. The Court also finds this case analogous to *United States v. Lam*, No. CR 18-00527 WHA, 2019 WL 6913141 (N.D. Cal. Dec. 19, 2019), another criminal trade secrets case. In *Lam*, the court denied Defendants' motion to

---

[1] Defendants' concerns about the use of the work "including" in paragraph 10 have been satisfied by the Court striking that word from the Indictment.

6

1  dismiss based on a lack of specificity and found that the Government had clarified in its
2  opposition brief and at oral argument which theory in the indictment it would be pursuing. *Id.* at
3  *3. Here, the Government has sufficiently clarified that its case is proceeding on the theory that
4  the CAD drawings, and not the physical parts, are the alleged trade secrets.

5  The Court does agree with Defendants, though, that the Grand Jury did not issue the
6  Indictment on the basis that any BOMs were independent trade secrets. As Defendants point out,
7  the Indictment does not allege that the Teamcenter Item ID contains BOMs. Reply 5. The Grand
8  Jury heard testimony regarding how BOMs in general supported the CAD drawings that the
9  Government alleges are the trade secrets. *See, e.g.*, Grand Jury Test. 170:14-171:1; 172:16-25. But
10  it does not appear that the Government ever presented a BOM to the Grand Jury and alleged the
11  BOM, or compilation of BOMs, were a trade secret. Therefore, the Court will bar the Government
12  from claiming a BOM is a trade secret at trial.

13  To be clear, the Government is not barred from introducing BOMs as evidence in support
14  of an assertion that a CAD drawing or drawings are a trade secret. "The government is not limited
15  at trial to evidence presented to the Grand Jury." *United States v. Avila*, 227 F. Supp. 3, 8 (N.D.
16  Cal. 1963); *see also United States v. Isgro*, 974 F.2d 1091, 1096 (9th Cir. 1992) ("the grand jury's
17  role was only 'to assess whether there is adequate basis for bringing a criminal charge'") (quoting
18  *United States v. Williams*, 504 U.S. 36, 37 (1992)).

19  In sum, the Court finds that the Indictment is sufficiently particular to give Defendants
20  proper notice of the charges against them, namely the conspiracy to commit theft of trade secrets
21  and eleven counts of possessing eleven stolen trade secrets, as identified by eleven separate
22  Teamcenter Items IDs. Accordingly, Defendants' motion to dismiss is DENIED.

23  **C. Bill of Particulars**
24  Even though the Indictment is constitutionally sufficient, the Court deems a bill of
25  particulars appropriate here for Counts Two through Twelve.
26  A bill of particulars has three functions:
27
28  to inform the defendant of the nature of the charge against him with sufficient precision to enable him to prepare for trial, to avoid or minimize the danger of surprise at the time of

7

trial, and to enable him to plead his acquittal or conviction in bar of another prosecution for the same offense when the indictment itself is too vague, and indefinite for such purposes. *Giese*, 597 F.2d at 1180. Defendants argue they need a bill of particulars for all three reasons, for all counts. Mot. 20.

To assess whether a bill of particulars is needed, the Court looks beyond the indictment and also evaluates the discovery that has been disclosed to a defendant. *United States v. Long*, 706 F.2d 1044, 1054 (9th Cir. 1983). Full discovery can obviate the need for a bill of particulars. *Long*, 706 F.2d at 1054; *United States v. Clay*, 476 F.2d 1211, 1215 (9th Cir. 1973). "A defendant is not entitled to know all the *evidence* the government intends to produce but only the *theory* of the government's case." *United States v. Ryland*, 806 F.2d 941, 942 (9th Cir. 1986) (citing *Giese*, 597 F.2d at 1181).

The Court does not find a bill of particulars necessary for Count One. In the Ninth Circuit, the conspiracy charge deliberately encompasses a universe of information that is quite broad, as the government need not even prove the existence of a trade secret to obtain a conviction. *Nosal*, 944 F.3d at 1045. The Government is entitled to the full scope of information outlined in the Indictment regarding Count One.

As to Counts Two through Twelve, the Government argues that it has gone beyond its discovery obligations by identifying with particularity the location of the trade secrets. Opp'n 22. Specifically, the Government points to its June 22, 2020 and August 10, 2020 letters to Defendants that include examples of the charged trade secrets along with the Bates stamp numbers and/or file paths for each example. *See* Ex. C, June 22 Government Letter, ECF 112-3, and Ex. E, July 8 Government Letter, ECF 112-5. Defendants respond that the Government's letters provide a non-exhaustive list of trade secrets that keep changing, and this uncertain and shifting landscape impairs their ability to prepare for trial. Reply 2.

In an April 1, 2020 letter to the Government, Defense counsel asked the Government to confirm that, for Counts Two through Twelve, the trade secret was the specific part identified in the Indictment. Ex. A, April 1 Defense Letter, ECF 112-1. The Government responded that the trade secrets are not the parts themselves but rather the "CAD files and BOM information for these eleven components, referenced under the Teamcenter Item Id, were Applied trade secrets." June

22 Government Letter 8. The Government's letter listed specific CAD files and BOM files that are not referenced in the Indictment. Mot. 18–19. The Government also expressly "reserve[d] the right to supplement this statement if it becomes aware of additional trade secrets." June 22 Government Letter 11. Similarly, in the July 8 letter, the Government wrote, "we reserve the right to supplement the list of trade secrets prior to the May 2021 trial date." July 8 Letter 1. In an August 10 letter, the Government appeared to reverse course and listed file names that had appeared in the June 22 letter that would now not be relied upon at trial. Ex. F, August 10 Government letter, ECF 112-6. Defendants point to this shifting landscape, and the Government's comments suggesting they reserve the right to add trade secrets that were not presented to the Grand Jury, as reasons why they cannot adequately prepare for trial. Reply 2.

In *United States v. Trumpower*, a money laundering case, the court ordered a bill of particulars because "[w]ithout any pleading as to the factual context for that specific crime, the Court is concerned that a serious question as to adequate notice has been raised." 546 F. Supp. 2d 849, 852 (E.D. Cal. 2008). "[W]ithout more information he is unable to adequately prepare for trial and there is an undue risk of surprise." *Id.*

The Court shares the Defendants' concerns in this case. The Teamcenter Item IDs do not identify the alleged trade secrets with particularity but rather direct the Defendants to a universe of information that contains the alleged trade secrets. At the October 13, 2020 hearing, the Government indicated that a bill of particulars for Counts Two through Twelve would essentially be a cut-and-paste of the June 22nd letter. The Court will give the Government a chance to review this list before submitting it as a bill of particulars to the Court.

**IV.   ORDER**

For the foregoing reasons, IT IS HEREBY ORDERED that:

1. Defendants' motion to dismiss the indictment is DENIED.
2. The Court STRIKES the word "including" from paragraph 10 of the Indictment.
3. The Government is to file a Bill of Particulars identifying the alleged trade secret charged in Counts Two through Twelve.

Dated: October 29, 2020

_____
BETH LABSON FREEMAN
United States District Judge