1
2
3              **UNITED STATES DISTRICT COURT**
4            **NORTHERN DISTRICT OF CALIFORNIA**
5                    **SAN JOSE DIVISION**
6

7    USA,                                    Case No.  17-cr-00603-BLF-1
8                    Plaintiff,
                                             **ORDER GRANTING FRANKS**
9            v.                              **HEARING**
10   LIANG CHEN,                             [Re:  ECF 114]
11                   Defendant.
12
13           Facing charges of both conspiring to steal and possessing stolen trade secrets from their
14   former employer, Defendants Liang Chen, Donald Olgado, Robert Ewald, and Wei-Yung Hsu
15   (collectively "Defendants") move to suppress evidence seized as a result of two search warrants.
16   Mot., ECF 114. For the following reasons, the Court GRANTS Defendants a *Franks* hearing at
17   which they can challenge the veracity of FBI Special Agent Ann Trombetta ("SA Trombetta"),
18   who submitted the affidavit in support of the two warrants, regarding the omission of the denial of
19   a TRO by a state court judge in related civil litigation. Further, under the doctrine of severability,
20   the Court will STRIKE language from the warrants authorizing searches and seizures of materials
21   between March 2012 and July 19, 2012 and suppress evidence seized for the period before July
22   19, 2012.
23
24   **I.      BACKGROUND**
25           The Government has charged all four Defendants with one count of conspiracy to commit
26   theft of trade secrets, 18 U.S.C. § 1832(a)(5), and eleven counts of possession of stolen trade
27   secrets, and aiding and abetting, 18 USC §§ 1832(a)(3) & 2. Indictment ¶¶ 11–20, ECF 1. All four
28   Defendants are former employees of Applied Materials, Inc. ("Applied"), which supplied

United States District Court
Northern District of California

equipment, services, and software to enable the manufacturing of semiconductor chips for electronics, flat panel displays for computers, smartphones and televisions, and solar products. *Id.* ¶¶ 1–5. The technology at issue supported the high-volume manufacturing of semiconductor wafers to be used in lighting and electronic devices, such as flatscreen televisions and smart phones. *Id.* ¶ 6. Metal Organic Chemical Vapor Deposition ("MOCVD") was, as the Government describes it, "a highly complex process for growing crystalline layers by spraying different chemicals on wafers." *Id.* ¶ 7.

In March 2013, SA Trombetta applied to Magistrate Judge Paul Grewal for two search warrants: one for the residence of Defendant Olgado and the second for three Gmail email accounts controlled by Google that belonged to Defendants Chen, Ewald, and Olgado, respectively. *See* Ex. A, Affidavit, ECF 114-3. The twenty-five page affidavit begins by describing SA Trombetta's background and experience in investigations related to computer and internet crime. *Id.* ¶¶ 1-4. It goes on to list the relevant statutes, *id.* ¶¶ 5-6, and the facts supporting probable cause. *Id.* ¶¶ 7-34. Specifically, it provides background on Defendants' employment history with Applied and the internal projects involving MOCVD technology, Project Neon, which was referred to internally as "Nlighten", and "Paragon." *Id.* ¶¶ 7-11. The affidavit then describes how Defendant Chen continued to work on a proposal for a spinout that would involve licensing the technology and processes to a separate entity that would pay Applied up to $8 million for the right to use the technology. Id. ¶ 11. Applied's CEO, Michael Splinter, rejected the proposal in part because the price was too low relative to Applied's investment to develop the technology. *Id.* Splinter communicated this decision to Defendant Chen through Mark Pinto, an executive vice president at Applied, and Pinto also told Defendant Chen that he had no authorization going forward to represent any connection to Applied for any future venture he might be pursuing. *Id.*

SA Trombetta then explains that Applied provided her with "e-mails, files, and documents turned over by Olgado to Applied Materials pursuant to a Stipulated Temporary Restraining Order (TRO) between Olgado and Applied Materials, as well as additional e-mails and other documents Applied Materials found within its own systems." Affidavit ¶ 14. This was the only reference to

the stipulated TRO or any previous litigation connecting these parties. SA Trombetta goes on to detail Defendant Olgado's coordination with other Defendants regarding downloading MOCVD-related files from Applied to devices they controlled. Id. ¶¶ 15-34. The affidavit also describes Defendants' efforts to establish a new company called Envision and attract venture capital and private equity support. *Id.* ¶¶ 13, 15-17, 20, 25, 32. The affidavit cites several email exchanges between Defendants that suggest Defendants knew they needed to proceed with caution. For instance, Defendant Olgado wrote to Defendants Chen and Hsu, "My problem is the paper trails and conflict of interest with [Applied.]" Id. ¶¶ 16-17.

SA Trombetta concludes that Defendant Olgado "conducted a substantial amount of the activities described in this Affidavit from home" and that his computer, other storage devices, and Applied files were at his home, "along with other items used in violation of 18 U.S.C. §§ 1832 and 1030." Affidavit ¶ 33. Additionally, SA Trombetta concludes that the three Gmail accounts "are likely to contain additional e-mail traffic regarding the theft of trade secrets and other activities described in this Affidavit." *Id.* ¶ 34. Magistrate Judge Grewal signed the two warrants on March 5, 2013. Ex. B, Gmail warrant, ECF 114-3; Ex. C., Premises warrant, ECF 14-3. The Gmail warrant was executed on March 11, 2013,[1] and the premises warrant on Defendant Olgado's home was executed on March 12, 2013. Opp'n 11, ECF 120.

Defendants filed this motion on August 28, 2020, arguing that the search warrants lack probable cause, suffer from material omissions that vitiate probable cause, and lack particularity while being overboard. *See* Mot. The Government opposes Defendants' motion on all grounds. *See* Opp'n.

## II.   LEGAL STANDARD

Probable cause is evaluated by a "totality-of-the-circumstances analysis." *Illinois v. Gates*,

---

[1] On October 19, 2020, the Government informed the Court that it will not offer any evidence at trial that was seized pursuant to the Gmail warrant. *See* Notice, ECF 130. The Government requested that the Court find Defendants' motion to suppress as it pertains to the Gmail warrant moot. *Id* 2. Defendants objected to this request and ask that the Court rule on the Gmail warrant. See Suppl. Mem., ECF 133. The Court accepts the Government's representation that it will not use any of the emails seized from the Gmail accounts, but the Court  will include the Gmail warrant in this ruling only to preserve Defendants' opportunity to contest fruits of an unlawful search if the Court determines that the search lacked probable cause.

United States District Court
Northern District of California

462 U.S. 213, 238 (1983).

> The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis for ... conclud[ing]" that probable cause existed.

*Gates*, 462 U.S. at 238–39 (alterations in original) (citation omitted). "Great deference" is accorded to the magistrate judge's determination of probable cause. *United States v. Hay*, 231 F.3d 630, 634 n.4 (9th Cir. 2000) (citing *United States v. Clark,* 31 F.3d 831, 834 (9th Cir. 1994)).

An affidavit in support of a search warrant receives a "presumption of validity."  *Franks v. Delaware*, 438 U.S. 154, 171 (1978). However,

> where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request.

*Franks*, 438 U.S. at 155-56. Material omissions in affidavits are treated the same as false statements. *United States v. Stanert*, 762 F.2d 775, 781 (9th Cir. 1985), amended, 769 F.2d 1410 (9th Cir. 1985). The omission of facts rises to the level of misrepresentation only if the omitted facts "cast doubt on the existence of probable cause." *United States v. Johns*, 948 F.2d 599, 606–07 (9th Cir. 1991) (citation omitted).

Finally, search warrants must be specific. *United States v. Hill*, 459 F.3d 966, 973 (9th Cir. 2006). "Specificity has two aspects: particularity and breadth. Particularity is the requirement that the warrant must clearly state what is sought. Breadth deals with the requirement that the scope of the warrant be limited by the probable cause on which the warrant is based." *United States v. Banks*, 556 F.3d 967, 972–73 (9th Cir. 2009) (citing *Hill*, 459 F.3d at 973).

## III.   DISCUSSION

The Court will address each argument in turn.

**A.  Standing**

The Government argues that Defendant Hsu has no standing to challenge either warrant, and that Defendants Chen and Ewald do not have standing to challenge the premises warrant because they cannot establish an expectation of privacy in the search of Defendant Olgado's home. Mot. 24. Defendants did not respond to this argument. *See* Reply, ECF 123.

A defendant has standing to challenge the admission of illegally obtained evidence only if there is a personal violation of a legitimate expectation of privacy. *Katz v. United States*, 389 U.S. 347, 351 (1967). "[T]o say that a party lacks fourth amendment standing is to say that his reasonable expectation of privacy has not been infringed." *United States v. Taketa*, 923 F.2d 665, 669 (9th Cir. 1991). Fourth amendment rights are *personal* rights—"[a] person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's premises or property has not had any of his Fourth Amendment rights infringed." *Id.* at 670. (quoting *Rakas v. Illinois*, 439 U.S. 128, 134 (1978)).

Here, the Court finds that Defendants Chen, Ewald, and Hsu have no legitimate expectation of privacy in a search of Defendant Olgado's home. Therefore, they have no standing to challenge this warrant. Similarly, the Gmail warrant authorized searches of the accounts of Defendants Olgado, Chen, and Ewald, but not Defendant Hsu. Accordingly, the Court finds that Defendant Hsu has no standing to challenge this warrant.

**B.  Probable Cause**

Defendants argue that although the affidavit repeatedly invokes 18 U.S.C. § 1030, the Computer Fraud and Abuse Act (CFAA), the affidavit presents no evidence that Defendant Olgado lacked authorization to download the files, and therefore there is no probable cause under *United States v. Nosal*, 676 F.3d 854. Mot. 15-16. Additionally, Defendants argue that the affidavit presented no evidence tending to show that the information allegedly stolen by Defendants was, in fact, secret, that Applied had taken any measures to keep any of the allegedly stolen information secret, or that the allegedly stolen information possessed independent financial value. Mot. 16-18; Reply 4-5. The Government responds by reciting numerous passages in the affidavit that demonstrate probable cause. Opp'n 12-15.

United States District Court
Northern District of California

The Court concludes that, facially, the affidavit presented a fair probability for the issuing magistrate judge to find that contraband or evidence of a crime would be found in the Gmail accounts and at Defendant Olgado's house. The Court therefore finds the warrants are supported by probable cause.

In *Nosal*, the Ninth Circuit interpreted the CFAA and held that the phrase "exceeds authorized access" in the CFAA does not extend to violations of a company or website's computer use restrictions. 676 F.3d at 863. The general purpose of the CFAA "is to punish hacking—the circumvention of technological access barriers—not misappropriation of trade secrets." *Id.* Therefore, the Ninth Circuit held that the phrase "exceeds authorized access" in the CFAA is limited to violations of restrictions on *access* to information, and not restrictions on its *use. Id.* 863-64.

Here, SA Trombetta cites in the affidavit an October 9, 2012 email from Defendant Olgado to Defendant Chen in which Defendant Olgado writes about circumventing Applied's access restrictions in order to download technology onto a USB drive:

> Tough last few days. [Applied] push software that stops you from using and usb storage. My USB drive also crashed, might not be a coincidence. I have to recover these files of [sic] I'm hosed… I now have a problem with the rest. I will have to figure out how to get around it. Maybe setup a FTP site. It will be very slow. I need to get some hackers.

Affidavit ¶ 23. Other sections in the affidavit detail Defendant Olgado's additional efforts "to circumvent Applied Material's restriction against downloading technology onto a USB drive." *Id.* ¶ 26. Defendant Olgado wrote in an email, "I have a solution by connecting my NAS [network attached storage] and resetting the windows network to my network so I can get files off. These guys are pathetic. So if anyone wants to pull stuff off, let me know." *Id.* The Court finds these paragraphs support the magistrate judge's finding of probable cause.

As for Defendants' arguments that the affidavit did not contain any evidence that the information allegedly stolen was secret, kept secret by Applied, or contained any independent financial value—the three definitional requirements for a trade secret—the Court disagrees. "Probable cause does not require specific evidence of every element of an offense." *United States*

1    *v. Thornton*, 710 F.2d 513, 515 (9th Cir. 1983) (citing *Adams v. Williams*, 407 U.S. 143, 149

2    (1972)). In *United States v. Lam*, another criminal trade secrets case, the court found that "the

3    warrant need not explicitly establish the existence of trade secrets in the Gmail accounts, only

4    probable cause that trade secrets may have been stolen." No. CR 18-0527 WHA, 2020 WL

5    4349851, at *2. (N.D. Cal July 29, 2020). *Lam* found probable cause in the implication from

6    "defendants' actions involving their personal emails, their employment history," and the nature of

7    their industry, which "presented a fair probability for a magistrate judge to infer that Genentech

8    trade secrets were stolen, and could be found on the Lams' personal Gmail accounts." *Id.* at *3.

9         Here, SA Trombetta submitted similar facts that presented a fair probability for the

10   magistrate judge to find probable cause. The affidavit states that Defendants "Chen, Olgado, and

11   Ewald used their Google email accounts to discuss funding for Envision, as well as the theft of

12   Nlighten and Paragon from Applied Materials." Affidavit ¶ 15.The Affidavit references another

13   email in which Defendant Olgado told Defendants Chen and Hsu, "My problem is the paper trail

14   and conflict of interest with [Applied]," and the affiant went on to state "I have reviewed several

15   emails that make it clear that Chen and Olgado planned to modify the existing Nlighten and

16   Paragon technology to meet the needs of their potential clients." *Id.* ¶ 18. SA Trombetta further

17   states that Applied considers its Bills of Materials (BOMs) trade secrets and cites a November 8,

18   2012 email from Defendant Ewald to Defendant Olgado discussing managing Nlighten's BOMs in

19   different software programs. *Id.* ¶ 29. "Let me put it in perspective," Defendant Olgado wrote to

20   Defendant Ewald, "Nlighten BOM I tried to download yesterday. It crashed but not before spitting

21   out 25,000 lines in excel. Has more than 8 levels." *Id.* Finally, the affiant notes that Applied

22   rejected a proposal from Defendant Chen that would have paid Applied up to $8 million for the

23   right to use the technology in part because "the prices being offered for the technology were too

24   low" in light of Applied's "substantial investment to develop the MOCVD technology." *Id.* ¶ 11.

25   The Court finds that this fact, in particular, would present a fair probability that the technology

26   had independent financial value and that all the facts collectively present a fair probability that

27   Applied's trade secrets were stolen and could be found in Defendants' Gmail accounts and on

28   devices at Defendant Olgado's home.

United States District Court
Northern District of California

United States District Court
Northern District of California

Accordingly, the Court DENIES Defendants' motion to suppress evidence seized under the warrants on the grounds that the affidavit facially demonstrates probable cause.

### C.  Material Omissions

Defendants next argue that the warrant suffers from several material omissions, most notably the fact that a state court judge had recently rejected Applied's application for a TRO in a civil suit against Defendants on the basis that Applied failed to show a reasonable probability that it was likely to prevail on the merits. Mot. 19-20. The Government argues that this purported omission was immaterial to the probable cause finding and that Defendants have not met their "substantial showing" burden to warrant a *Franks* hearing. Opp'n 16-19. The Court agrees with Defendants as to the material omission of the TRO and will GRANT a Franks hearing on that omission. The Court does not find that the other purported omissions introduced by Defendants, which are detailed below, cast doubt on the existence of probable cause and therefore will not grant a *Franks* hearing to evaluate those omissions.

Defendants argue that the affidavit's failure to notify the magistrate judge about the state court judge's decision to reject Applied's TRO application is inexplicable, especially since the affidavit acknowledged the litigation and included references to the stipulated TRO between Defendant Olgado and Applied, pursuant to which Defendant Olgado had provided Applied with many of the emails on which the affidavit relied. *See* Affidavit ¶ 14. Mot. 9. Defendants analogize to *Stanert*, in which the affiant included the fact that the defendant was arrested in Panama with approximately fourteen pounds of cocaine but omitted the fact that the defendant had apparently not been convicted of any offense. *Stanert*, 762 F.2d at 777, 780. The Ninth Circuit rejected the Government's arguments that the affiant's omission was not intentional or reckless, the affiant did not know whether the defendant had been convicted, and since the affidavit spoke only in terms of an arrest, the reasonable reader would conclude that no disposition was known. *Id.* at 780. The Ninth Circuit clarified that "clear proof of deliberate or reckless omission is not required" at this initial stage and "all that is required is that the defendant make a substantial showing that the affiant intentionally or recklessly omitted facts required to prevent technically true statements in the affidavit from being misleading." *Id.* at 781. Further, the Ninth Circuit held that although the

8

affiant might not have known precisely what the disposition of the arrest was, "it appears that she was aware that DEA records suggested that Stanert had not been convicted of any charge." *Id.* And finally, the Ninth Circuit rejected the Government's argument about the inference to be drawn from only speaking in terms of an arrest. "Inclusion of the [disposition] serves to weaken the significance of Stanert's arrest for possession of 14 pounds of cocaine because the apparent absence of a conviction would raise doubts as to whether Stanert had any connection with the cocaine which was seized." *Id.* The Ninth Circuit found that this, combined with other omissions, constituted a substantial preliminary showing that the affidavit contained reckless or deliberate falsities and omissions. *Id.* at 782.

The Government argues that the set of facts before the state court judge were different than the set of facts before the magistrate judge. Opp'n 18. Additionally, the state court judge said that his decision regarding the TRO was not a determination on the merits. *Id.* Further, the Government argues that SA Trombetta only referenced the stipulated TRO to explain the origin of the emails she planned to include in the affidavit, not to encourage the magistrate judge to draw inferences from Defendant Olgado's act of entering into the stipulation. *Id.* Finally, the Government attempts to distinguish *Stanert* on the grounds that there is a finality associated with a non-conviction, and the TRO decision, which was only based on "the current state of the evidence" as it was at the time of the decision, does not carry the same finality. *Id.* 19.

The Court agrees with Defendants that the omission is material and analogous to the material omission in *Stanert*. It is reasonable to assume that if SA Trombetta knew of the stipulated TRO, then she was aware of other aspects of the civil litigation. The Court therefore finds that Defendants have made a substantial showing of a material omission, and that omission casts doubt on the existence of probable cause. Defendants are entitled to a *Franks* hearing on this issue that allows them "to investigate the affiant's veracity." *U.S. v. Garcia-Cruz*, 978 F.2d 537 (9th Cir. 1992) (citing *United States v. Motz*, 936 F.2d 1021, 1023 (9th Cir. 1991)).

The Court does not find that any of the other omissions cited by Defendants rise to the level of being material to the finding of probable cause. The other purported omissions are: the fact that Defendants had denied Applied's theft allegations and continued to oppose Applied in the

United States District Court
Northern District of California

1  pending civil litigation; sworn declarations from Defendants Chen and Hsu in the civil litigation,

2  which were among the evidence before the state judge for the TRO decision; information in

3  Defendant Chen's declaration that addresses the power point presentation referred to in the

4  affidavit; an exhibit to Defendant Chen's declaration, an August 24, 2012 email from Applied's

5  president stating that he "personally would be happy to help you with this project if you can find

6  some group that can make a more compelling proposal;" another exhibit to Defendant Chen's

7  declaration, a December 11, 2012 email in which a then-executive vice president at Applied stated

8  "I do need to understand a few things before committing" in response to an invitation to join the

9  board of Defendant Chen's "new venture." Mot. 10-12. The Government responds that there is no

10  authority for the novel proposition that a search warrant affidavit "must include a defendant's self-

11  serving, counterfactual declaration of innocence in its probable cause showing." Opp'n 19. The

12  Government cites *United States v Zhang* for the proposition that an affidavit is not required to

13  indulge in any defense theory. *United States v. Zhang*, No. CR-05-00812 RMW, 2010 WL

14  4807099, at *2 (N.D. Cal. Nov. 19, 2010). In *Zhang*, the court denied a *Franks* hearing because it

15  did not find that omissions concerning a lack of a nondisclosure agreement and facts regarding

16  how the company failed to keep its trade secrets secret negated probable cause. *Id.* "Even if the

17  false statement was [made] recklessly or intentionally, in order for a *Franks* hearing to be

18  required, the defendant must show that the omitted information when added would negate

19  probable cause." *Id.*

20      Taken as a whole, the Court does not find that these additional omissions would negate

21  probable cause if added to the warrants. An affidavit is not a bench memorandum that evenly lays

22  out both sides of an argument. It is a fair assumption that Defendants would have a defense to the

23  facts asserted in the affidavit, and the affiant is not required to present the Defendants' case to the

24  magistrate judge. The facts in the affidavit detail how Defendants worked to circumvent Applied's

25  access restrictions to download materials to their personal devices while they were simultaneously

26  working to form a new company and reaching out to investors for an idea based off the same

27  technology. *See* Affidavit, ¶¶ 7-34.

28      In sum, Defendants are entitled to a *Franks* hearing on the issue of the affiant's omission

1    of the state court's denial of the TRO.

2          **D.  Particularity and Overbreadth**

3          Defendants argue that the warrants fail the Fourth Amendment's specificity requirement by

4    both being overbroad and lacking particularity. Specifically, Defendants argue that the warrants

5    provided no meaningful guidance to the executing agents about what items could be seized, and

6    the scope of the searches authorized extended far beyond any probable cause arguably established

7    by the underlying affidavit. Mot. 23-24. The Government argues that the warrants were

8    sufficiently particular and not overbroad, and if the Court does find them overbroad, severance,

9    not complete suppression, is the proper remedy. Opp'n 21-22.

10         A warrant's description "must be specific enough to enable the person conducting the

11   search reasonably to identify the things authorized to be seized." *United States v. Spilotro*, 800

12   F.2d 959, 963 (9th Cir. 1986) (citing *United States v. McClintock*, 748 F.2d 1278, 1282 (9th Cir.

13   1984)).

14

15         In determining whether a description is sufficiently precise, we have concentrated on one
      or more of the following: (1) whether probable cause exists to seize all items of a particular
16    type described in the warrant; (2) whether the warrant sets out objective standards by
      which executing officers can differentiate items subject to seizure from those which are
17    not; and (3) whether the government was able to describe the items more particularly in
      light of the information available to it at the time the warrant was issued.
18

19    *Id.* (internal citations omitted). Here, the Government points to limitations in both warrants that

20   permit only the seizure of items referencing Applied "if those terms appear in a context that

21   connects them to the conduct described in the search warrant affidavit." Mot. 21; Gmail warrant

22   40; Premises warrant 45. Both warrants then delineate other relevant search terms that involve

23   "communications between the Defendants and others which involved individuals (Pinto and

24   Splinter), program names, entities, technical definitions, or other terms which were directly

25   relevant to the MOCVD trade secrets." Mot. 22; Gmail warrant 40; Premises warrant 45. The

26   premises warrant limited its scope to records "relating to violations of 18 U.S.C. § 1030 and/or 18

27   U.S.C. § 1832, and that involve Applied Materials or Envision" from March 1, 2012, to the

28   present and that refer or pertain to a delineated list of terms. Premises warrant 45. The premises

United States District Court
Northern District of California

1    warrant included a detailed protocol for executing the warrant. *Id.* 47-48. Defendants maintain this

2    is not enough guidance.

3            The Court disagrees with Defendants and finds that the affidavit established probable cause

4    to seize the items described in the two warrants and that the warrants set out objective standards,

5    in the form of the delineated terms, by which executing officers could differentiate items subject to

6    seizure from those which are not. Additionally, like in *Lam*, "The government here was not in a

7    position to determine what specifically constituted a trade secret at that time," and "[t]he warrant

8    here set out objective standards narrowing the items to be seized (e.g. information involving

9    Genentech, its competitors, and pharmaceutics) to the extent it could in light of the information

10   that was available to it at the time." 2020 WL 4349851, at *6. The warrants were thus sufficiently

11   particular in this regard.

12           Defendants also argue that the warrants were overbroad. Mot. 23-24. The warrants

13   authorized the seizure of emails and attachments dating back to March 1, 2012, even though the

14   affidavit stated that Applied had authorized Defendant Chen to pursue joint ventures and/or

15   spinoffs until at least July 20, 2012. Mot. 24; Affidavit ¶ 11. The Government responds that

16   Applied shut down the MOCVD technology project in March 2012, and it is reasonable to infer a

17   "'fair probability' that evidence of the early stages of Chen's scheme to steal trade secrets might

18   exist in March 2012." Opp'n 22.

19           Courts in this district have found search warrants overbroad when the date range exceeds

20   the reasonable scope of probable cause. *See, e.g.*, *United States v. Cerna*, No. CR 08-0730 WHA,

21   2010 WL 3749449, at *17-*18 (N.D. Cal. Sept. 22, 2010) (finding insufficient probable cause to

22   allow for the seizure of cell phone records nine months preceding a homicide and sufficient

23   probable cause for seizure of the cell phone records from two month preceding the homicide to

24   two months subsequent to the homicide). Here, the Court finds that the seizures should be

25   authorized beginning on July 20, 2012, not March 2012. July 20, 2012 was the date on which

26   Defendant Chen was told that Applied no longer had an interest in pursuing a spinout business for

27   the MOCVD technology. Affidavit ¶ 11. From March 2012 until that point, Defendant Chen was

28   exploring a possible spinout business with Applied's permission. *Id.* ¶¶ 10-11. As the Government

United States District Court
Northern District of California

notes, the proper remedy is severance, *see United States v. Sears*, 411 F.3d 1124, 1129 (9th Cir. 2005), and the Court will STRIKE the portions of the warrants that authorizes searches and seizures of materials from March 2012 through July 19, 2012 and suppress evidence seized for the time period before July 19, 2012.

### E. Execution

Finally, Defendants argue that the execution of the search warrants exhibited a "reckless pattern of disregard for the applicable rules and protocols" and this, combined with the "fundamental deficiencies" of the warrants and warrant application, requires suppression. Mot. 24-25. The Court has already determined the warrants and warrant application do not, at this time, require suppression, and Defendants offer no authority in this circuit to support the idea that any purported deficiencies, such as a late application for an extension of time to return electronic devices, result in suppression of evidence.

## IV.   ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that Defendants are GRANTED a *Franks* hearing on the issue of whether the omission of a denied TRO application in the civil litigation between Applied and Defendants would eliminate a fair probability for finding probable cause. Additionally, the Court STRIKES language from the warrants that allows searches and seizures of material from March 2012 until July 19, 2012.

Dated: November 10, 2020

BETH LABSON FREEMAN
United States District Judge