1
2
3                    **UNITED STATES DISTRICT COURT**
4                  **NORTHERN DISTRICT OF CALIFORNIA**
5                         **SAN JOSE DIVISION**
6

7    USA,                                  Case No.  17-cr-00603-BLF-1
8                    Plaintiff,
                                           **ORDER DENYING MOTION TO**
9           v.                             **SUPPRESS EVIDENCE**
10   LIANG CHEN,                           [Re:  ECF 114]
     DONALD OLGADO,
11   WEI-YUNG HSU, and
     ROBERT EWALD,
12
                     Defendants.
13

14
15          Defendants Liang Chen, Donald Olgado, Wei-Yung Hsu, and Robert Ewald are charged

16   with one count of conspiracy to commit theft of trade secrets, 18 U.S.C. § 1832(a)(5), and eleven

17   counts of possession of stolen trade secrets, and aiding and abetting, 18 USC §§ 1832(a)(2), (3).

18   Indictment ¶¶ 11–20, ECF 1. They filed a motion to suppress evidence seized as a result of two

     search warrants. *See* Mot., ECF 114. On November 10, 2020, this Court granted a *Franks* hearing
19
     on the issue of the search warrant affidavit's omission of a denied Temporary Restraining Order
20
     ("TRO") application in the state court civil litigation between Applied Materials, Inc. ("Applied
21
     Materials") and Defendants.
22
            The Court held an evidentiary hearing on March 16, 2021, at which it heard witness
23
     testimony from Federal Bureau of Investigation ("FBI") Special Agent Ann Trombetta ("SA
24
     Trombetta"). For the reasons set forth below, Defendants' motion to suppress evidence is
25
     DENIED.
26
     **I.    EVIDENCE PRESENTED TO THE COURT**
27
            SA Trombetta was called to testify by the Government, and Defendant Olgado cross-examined
28

*(left margin, vertical text)* United States District Court  Northern District of California

her at length. The testimony and admitted exhibits presented to the Court are summarized below.

### A.    Direct Examination of SA Trombetta

SA Trombetta testified that she is currently a supervisory special agent with the FBI. She confirmed that she prepared the search warrant affidavit at issue in this case.

SA Trombetta testified about her background. She worked as an attorney before joining the FBI. She was very briefly a deputy district attorney in Mendocino County before working as a public defender in Yuba County. She joined the FBI in January 2010, and she underwent a 21-week course at Quantico, in Virginia, where she received training on all aspects of law and terrorism. After finishing her training at Quantico, she was assigned to the San Francisco field division and then the San Jose resident agency from October 2010 until May 2016. She was again stationed in San Jose from March 2018 through approximately March 2019. In between, she was stationed at FBI headquarters in Washington, D.C. After returning to San Jose for one year, she transferred to the Santa Rosa office where she currently supervises between 10-13 people as a supervisory special agent.

Back in 2012, SA Trombetta was assigned a trade secret theft investigation involving these Defendants when she was a member of the Violent Crimes Against Children and Intellectual Property Rights Unit. SA Trombetta testified that she was told in January 2013 to go to the United States Attorney's Office in San Jose for a meeting about a new potential intellectual property rights investigation. She testified that the alleged victim of the trade secrets theft was Applied Materials, and the investigation was in its early stages. SA Trombetta testified that her former supervisor, two assistant United States attorneys, and inside and outside counsel for Applied Materials were present for the meeting. SA Trombetta testified that the meeting lasted approximately one or two hours.

SA Trombetta testified that Applied Materials believed that Defendants had stolen trade secrets during their employment with Applied Materials. SA Trombetta testified that she "vaguely" recalled discussion about the existence of a civil suit during this meeting. SA Trombetta testified that she received a binder that was approximately 1.5 inches thick at the meeting. She testified that inside the binder, Applied Materials had laid out its investigation into Defendants.

United States District Court
Northern District of California

1  Inside the binder were court records, copies of emails, statements from involved parties, and

2  PowerPoints connected to the trade secrets.

3       SA Trombetta testified that, after the meeting, she and assistant United States attorney

4  ("AUSA") Dave Callaway read through the binder and determined that their next step would be to

5  execute search warrants in order to determine whether or not further evidence existed. SA

6  Trombetta testified that, based on the evidence they had at that point, they needed a search warrant

7  for the email accounts of Defendant Olgado and two other individuals and a search warrant for

8  Defendant Olgado's residence. After SA Trombetta drafted the search warrant affidavit, she

9  discussed it with AUSA Callaway, and it was then submitted to a magistrate judge. The magistrate

10 judge then signed the search warrant.

11      SA Trombetta was then shown Government Exhibit 1, the application and affidavit for

12 search warrant signed by Magistrate Judge Paul Grewal. She identified that she had submitted this

13 to the magistrate judge and recognized the signatures of Judge Grewal and AUSA Callaway. SA

14 Trombetta was then shown Government Exhibit 2, the search warrant for 831 Melville Avenue,

15 Palo Alto, California. SA Trombetta testified that she remembered this document, too. SA

16 Trombetta also testified that she had reviewed the search warrant affidavit prior to this hearing.

17      SA Trombetta then testified in depth about Government Exhibit 1. She testified regarding

18 the section titled, "Facts Supporting Probable Cause," on page 3. SA Trombetta testified that she

19 does not put every fact known in the investigation into the search warrant affidavit. She then read

20 a sentence from paragraph 4 of the affidavit: "Because this affidavit is submitted for the limited

21 purpose of establishing probable cause in support of the application for a search warrant, it does

22 not set forth every fact that others or I have learned during the course of this investigation."

23 Government Ex. 1 ¶SA Trombetta testified that she does not put every fact learned in the

24 investigation into the search warrant because it would be a very long warrant, and this was more

25 limited in nature in order to establish the probable cause and reasonable belief they had to request

26 to search. SA Trombetta testified that the requested search was tailored to specific items they were

27 trying to look for in connection with the search.

28      SA Trombetta then testified about paragraph 14 of the search warrant affidavit, which

3

referenced emails provided to her by Applied Materials. SA Trombetta testified that these emails, mostly from Defendants' personal email accounts, laid out the conspiracy she was investigating. She testified that she cited approximately 15 emails in the subsequent paragraphs. SA Trombetta read the first three sentences of paragraph 14:

> Applied Materials provided me with e-mails, files, and documents turned over by Olgado to Applied Materials pursuant to a Stipulated Temporary Restraining Order (TRO) between Olgado and Applied Materials, as well as additional e-mails and other documents Applied Materials found within its own systems. In a letter to Bradford Newman, counsel for Applied Materials, Erin McDermit, counsel for Olgado, stated that Olgado had searched his "personal computer as well as a DVD with Applied documents in Mr. Olgado's possession." The letter stated that the emails were located by Olgado searching his sent mailbox folders, as "he did not have emails in his inbox because he deleted emails from the other defendants in early December, 2012."

Government Ex. 1 ¶ 14. Agent Trombetta testified that she included this information because she needed to explain to the judge how she came into possession of these personal emails. She testified that since she had just started the investigation and not yet written a search warrant for anything, she shouldn't normally have been in possession of those emails and therefore needed to explain them. SA Trombetta affirmed that all of the emails were provided to her by Applied Materials. SA Trombetta testified that she understood that the emails were from both Applied Materials's internal email system and from the stipulated TRO. SA Trombetta testified that this was the only reference to the stipulated TRO in the search warrant affidavit. She testified that she did not otherwise discuss the civil litigation in the search warrant affidavit.

SA Trombetta then reviewed Government Exhibit 5, a copy of the stipulated TRO between Applied Materials and Defendant Olgado. SA Trombetta testified that she was provided this document in the binder from Applied Materials at the initial investigation meeting. The caption of the document is "Stipulated Temporary Restraining Order, Evidence Preservation Order, and Order Temporarily Staying Litigation as Between Plaintiff and Donald Olgado." Government Ex. 5. SA Trombetta testified that she understood that Defendant Olgado had agreed to have no further dealings with anything related to Applied Materials. SA Trombetta then read paragraph 2(c)(1), which stated that

> Within forty-eight (48) hours after the entry of this Order, Olgado shall…immediately return all hard copy files, documents, and other tangible property in his possession that belong to Applied Materials, as well as all communications (including emails and text messages) sent or received by and between him and any other person or entity, and all documents (including meta-data), relating to attempts by any Defendant to commercialize Applied Materials' MOCVD technology and processes for LEDs and Power Devices and or that relate to the formation, capitalization, investment, structure or operations of the entity or product which Defendants refer to as Envision."

Government Ex. 5 ¶ 2(c)(1). SA Trombetta stated that this passage spoke to how she obtained possession of many of the emails from Olgado's personal email account. SA Trombetta then read another sentence from this exhibit: "All further litigation between Applied Materials and Olgado is stayed through February 1, 2013." Government Ex. 5 at 5. SA Trombetta testified that this document was signed by Defendant Olgado and stamped by state court Judge Kevin E. McKenney. SA Trombetta testified that she relied on this document when drafting the search warrant affidavit to establish how she came in possession of personal emails without having executed a prior search warrant.

SA Trombetta next reviewed Government Exhibit 8, titled "Order Granting Plaintiff Applied Materials, Inc.'s *Ex Parte* Application for Temporary Restraining Order, Evidence Preservation Order, Expedited Discovery, and Order to Show Cause Re Issuance of a Preliminary Injunction." SA Trombetta stated that she did not recall having any exposure or having obtained a copy of this document at the time she prepared the search warrant affidavit. She testified that she did review this document for this hearing. SA Trombetta testified that this document indicated that the request for a TRO had been denied. SA Trombetta also testified that multiple paragraphs were crossed out by hand in this document, and there were many handwritten notes in the margins. She testified that, in her experience, it was not normal to see this much handwriting on a court document. She testified that she thought she would remember seeing a document with this kind of handwriting had she seen in in 2013, but she did not remember having seen this document. She testified that she did not believe she knew about this document when she prepared the search warrant affidavit. SA Trombetta also testified that she did not go to the clerk's office for the Santa Clara County Superior Court and review the civil docket. She stated that she did not summarize the civil docket in the search warrant application.

5

1    SA Trombetta was next shown Government Exhibit 3, a copy of the report she wrote

2    following the initial January 2013 investigation meeting. SA Trombetta testified that there was no

3    reference to the denied TRO in this report. SA Trombetta reviewed Government Exhibit 4, a copy

4    of her handwritten notes from the January 2013 meeting. This exhibit also did not mention the

5    denial of the TRO. SA Trombetta testified that she did not purposely leave out a reference to the

6    denied TRO in either her report or handwritten notes.

7    SA Trombetta reviewed Government Exhibit 6, a January 7, 2013 letter to Mr. Newman,

8    attorney for Applied Materials, from Ms. McDermit, attorney for Defendant Olgado. SA

9    Trombetta testified that this was contained in the binder given to her by Applied Materials. The

10    letter read, in part, "Pursuant to the stipulated temporary restraining order ('TRO') between Mr.

11    Olgado and Applied Materials, Inc. ('Applied'), enclosed please find a zip disk containing a PDF

12    list of Mr. Olgado's claimed personal and Applied files from Mr. Olgado's personal computer as

13    well as a DVD with Applied documents in Mr. Olgado's possession." Government Ex. 6 at 1. SA

14    Trombetta also testified that Exhibit 6 ended with an offer from Defendant Olgado to meet with

15    Applied Materials to discuss a potential resolution of his involvement in the lawsuit. Government

16    Ex. 6. SA Trombetta testified that there was no reference to the denial of the TRO, but there was a

17    reference to the stipulated TRO between Defendant Olgado and Applied Materials. SA Trombetta

18    testified that she has never spoken with Ms. McDermit, so she could not have asked her to leave

19    the denial of the TRO out of this letter.

20    SA Trombetta reviewed Government Exhibit 7, also provided by Applied Materials. It was

21    a summary of emails obtained by Applied Materials through the TRO and their internal system in

22    which Defendants discussed the trade secrets theft. It listed, in chronological order, relevant emails

23    and events along with the source of the information. Each entry on the chart was assigned a Tab

24    number, starting with Tab 1. SA Trombetta testified that this document aided her in preparing her

25    search warrant affidavit. SA Trombetta testified that Tab 42 stated, "Olgado signs Stipulated

26    Temporary Restraining Order." Government Ex. 7 at 10. SA Trombetta testified that, at the end of

27    the chart, there was a list of additional documents, including declarations from Defendants Chen,

28    Hsu, and Ewald that had been filed in opposition to Applied Materials's application for a TRO.

United States District Court
Northern District of California

1   SA Trombetta testified that the document did not include a reference to the denial of the TRO. SA

2   Trombetta testified that she did not know about the denial of the TRO, and therefore she could not

3   ask Applied Materials to leave this fact off the timeline.

4       To close her direct testimony, SA Trombetta stated that she did not intentionally leave out

5   the denial of the TRO in the search warrant affidavit submitted to the magistrate judge. She

6   testified that she did not make reference to Defendants Chen, Ewald, or Hsu when she mentioned

7   the stipulated TRO. She testified that she specified that the stipulated TRO was between Applied

8   Materials and Defendant Olgado. SA Trombetta testified that she there was no intent on her part to

9   deceive the judge or omit anything significant.

10      **B.    Cross-Examination of SA Trombetta**

11      SA Trombetta testified that she did selectively choose what to put in the search warrant

12  affidavit, based on all the evidence. Some things were included, and some were left out. She

13  rejected Defense counsel's characterization of her job when writing a search warrant as just

14  getting a ball across a goal line, presenting a certain amount of information to demonstrate

15  probable cause. She testified that she viewed her job as including relevant information known to

16  her at the time that will provide the judge with a comprehensive picture of why she is trying to

17  search and what she is trying to search. She testified that she would never try to manipulate the

18  inferences the judge would draw or tell half-truths.

19      SA Trombetta again reviewed Government Exhibit 3, her report from the initial January

20  2013 investigation meeting. She confirmed the people present at the meeting. SA Trombetta

21  testified that she realized that Paul Hastings, the law firm serving as outside counsel for Applied

22  Materials, was representing Applied Materials's interests. She also confirmed that she understood

23  that this meeting was Applied Materials's opportunity to explain why it wanted the Government to

24  investigate this matter. She testified that she and the other government representatives had an

25  opportunity to ask questions before they reviewed the binder and discussed among themselves

26  whether they believed they should open an investigation into the matter.

27      SA Trombetta restated that she did have a vague recollection of the civil case being

28  mentioned and stated it was her experience that this type of matter always had an associated civil

United States District Court
Northern District of California

United States District Court
Northern District of California

1    case. She testified that she had a vague recollection that Applied Materials had filed a civil suit

2    against Defendants. She testified that she knew the civil suit involved an application by Applied

3    Materials for a TRO. She believed that she knew that Defendants had denied the allegations. SA

4    Trombetta reviewed Government Exhibit 3 and confirmed she had written that Defendants denied

5    the allegations.

6          SA Trombetta testified that she knew that before July 2012, Defendant Chen had been

7    authorized by Applied Materials to market the MOCVD technology, and until approximately

8    August 2012, Defendant Chen had been instructed to find buyers or investors. SA Trombetta

9    testified that she knew Mark Pinto was the executive vice president ("EVP") at Applied Materials.

10   She testified that Applied Materials representatives had told her that Applied Materials had filed

11   for a TRO in the civil case. She testified that she also had reason to know that Applied Materials

12   had sought relief in state court by filing a lawsuit and asked a judge to do something. SA

13   Trombetta testified that she is no longer the case agent on this matter.

14         SA Trombetta testified that the binder she received from Applied Materials contained

15   declarations that had been filed in the civil case and the stipulated TRO. SA Trombetta reviewed a

16   document that was identical to Government Exhibit 7, the chronological chart of emails and

17   events. She next reviewed Defense Exhibit 26, the Chen Declaration in opposition to Applied

18   Materials's application for a TRO. SA Trombetta confirmed she had this document before

19   applying for the search warrant in this case. She confirmed she had read at least the first page. SA

20   Trombetta next reviewed Defense Exhibit 27, the Hsu Declaration in opposition to Applied

21   Materials's application for a TRO. She confirmed she had this document before applying for the

22   search warrant and had read at least the first page. She also confirmed it contained a hearing date

23   of December 19, 2012.  Next was Defense Exhibit 28, the Ewald Declaration in opposition to

24   Applied Materials's application for a TRO, and SA Trombetta confirmed she had this document

25   before applying for the search warrant and read at least the first page. SA Trombetta then reviewed

26   Defense Exhibit 29, the Declaration of Mark Pinto in support of Applied Materials's application

27   for a TRO. She confirmed the stated hearing date on this document was December 14, 2012, and

28   the first page stated that the case was filed on December 13, 2012. She stated that the document

United States District Court
Northern District of California

1   contained the name of Mr. Newman and the Paul Hastings law firm, and she knew the same

2   lawyers meeting with her in January 2013 were the same lawyers involved in the civil case

3   between Applied Materials and the four Defendants. SA Trombetta confirmed that Government

4   Exhibit 7, the email chronology, contained references to two other declarations and they, like the

5   other four declarations she reviewed, informed her that there was contested civil litigation between

6   Applied Materials and Defendants.

7          When asked if it was important to her investigation to know whether the state court judge

8   granted Applied Materials's application for a TRO, SA Trombetta said no. She testified that

9   knowing that the state court granted Applied Materials's TRO would not have been a fact

10  supporting probable cause for the search warrant in this case. She stated that she would not include

11  this fact in a search warrant. SA Trombetta testified that one of the exhibits from Applied

12  Materials at the January 2013 initial investigation meeting was the stipulated TRO. She testified

13  that Applied Materials's representatives did not mention at that meeting that there had been a

14  hearing on Applied Materials's TRO application in the civil litigation. She testified that until she

15  prepared for this hearing, she had no recollection of Applied Materials's representatives

16  mentioning that there had been a hearing on the TRO application. She testified that she had told

17  the prosecutors in this case that she had no recollection of this being mentioned at the meeting. SA

18  Trombetta testified that she did not ask Applied Materials's representatives at the January 2013

19  initial meeting what happened at the TRO hearing, and neither did anyone else, to her recollection.

20  She also did not recall anyone volunteering information about the TRO hearing. When asked if

21  she thought, in retrospect, it was something that someone might have asked about, SA Trombetta

22  said no. She testified that she did not think it was important to know if it had been approved or

23  denied. SA Trombetta confirmed that she could have asked follow-up questions of Applied

24  Materials's representatives at the January 2013 meeting, as could the prosecutors.

25         When asked about her handwritten notes from this meeting, SA Trombetta confirmed that

26  she described the four men that were the subject of the investigation as "defendants" by the middle

27  of the second page. She confirmed she had never met with Applied Materials previously nor knew

28  anything about its practices and procedures related to protecting trade secrets. She confirmed she

1    learned during the meeting that Applied Materials had previously directed Defendant Chen to

2    attempt to find a buyer for the MOCVD business. SA Trombetta confirmed this meeting occurred

3    before the FBI had technically opened the investigation and before she had the chance to read the

4    binder.

5        SA Trombetta testified that, as a result of the January 2013 meeting, she knew there was a

6    pending civil case between Applied Materials and Defendants and that she could go to the Santa

7    Clara County courthouse and look up the docket. SA Trombetta testified that, at the time of the

8    January 2013 meeting, she did not know that a hearing had been held on the TRO application. She

9    had not yet reviewed the contents of the binder, including the declarations with December 2012

10   hearing dates on them. SA Trombetta testified that, from her legal training, she knew applications

11   for TROs in criminal cases were heard on an expedited basis but that she did know about TROs in

12   civil cases. She affirmed that she knew that the binder from Applied Materials contained both

13   declarations in support of and in opposition to the TRO application.  SA Trombetta testified that,

14   after the January 2013 meeting, she and AUSA Callaway decided to apply for a search warrant.

15   She said they first read everything presented to them and then made that decision approximately

16   one or two weeks after the meeting. She testified that she believed that AUSA Callaway had read

17   the materials before the two of them spoke.

18       Defense counsel then showed SA Trombetta Defense Exhibits 30, 31, and 32, which were

19   reports from SA Trombetta memorializing follow-up questions via email that she asked of Applied

20   in requests for additional information. Defense Exhibit 33 was a report by SA Trombetta

21   containing an email exchange between Defendant Chen and EVP Pinto. SA Trombetta testified

22   that Applied Materials was cooperative in answering questions from her or other government

23   representatives. She stated that she never asked Applied Materials representatives about the result

24   of the TRO application, and they never volunteered this information. To her recollection, there had

25   never been a conversation about it.

26       Defense counsel returned to Defense Exhibit 29, the Declaration of EVP Pinto in support

27   of Applied Materials's application for a TRO. SA Trombetta testified that she reviewed the

28   declaration prior to drafting the search warrant affidavit but she was unsure if she relied on this

United States District Court
Northern District of California

United States District Court
Northern District of California

1    declaration. SA Trombetta testified that she did not believe she had done any other investigation

2    outside of relying on the materials Applied Materials provided her. She confirmed that her

3    affidavit omitted that there was civil litigation between Applied Materials and Defendants; that the

4    litigation related to trade secrets; that she had in her possession sworn statements by Defendants

5    Chen, Hsu, and Ewald concerning the litigation; that the litigation was filed in December 2012;

6    that Applied Materials had sought a TRO; and that she did not know the result of that application.

7    She testified that she did reference the stipulated TRO between Applied Materials and Defendant

8    Olgado and that the magistrate judge was left uninformed that there was litigation between

9    Applied Materials and Defendants. SA Trombetta testified that she did inform the magistrate

10   judge that Applied Materials had provided her with documents. She confirmed that she did not

11   state that Applied Materials was an interested private litigant. She confirmed that the magistrate

12   judge did not know that her entire investigation consisted of listening to what Applied Materials

13   said or reading documents that Applied Materials had provided. She confirmed that the magistrate

14   judge did not know that she had decided not to include information from the Chen and Hsu

15   declarations. She also confirmed that the magistrate judge did not know that a state court judge

16   had denied the TRO application and that she did not know the result of that application.

17   To wrap up its cross-examination, Defense counsel had SA Trombetta compare passages

18   from EVP Pinto's declaration to her own search warrant affidavit. On several instances, the two

19   used substantially similar language. SA Trombetta was then asked about the Chen Declaration,

20   and the Court reminded Defense counsel that the *Franks* hearing was limited in scope to the

21   omission in the search warrant affidavit of the denial of the TRO. Defense counsel acknowledged

22   this and stated he had no further questions.

23   ### C.    Redirect Examination of SA Trombetta

24   SA Trombetta again reviewed Government Exhibit 1, the search warrant affidavit. She

25   confirmed she made an explicit reference to the stipulated TRO between Defendant Olgado and

26   Applied Materials. SA Trombetta also testified that she never worked as a civil litigator while

27   practicing law and had no idea what the typical timeframe was for acting on a TRO. She testified

28   that she did not know of any hearings that occurred in December 2012 in the civil litigation. She

1    confirmed that she specified in the affidavit that she had knowledge of counsel for Olgado

2    providing documents in his possession to Applied Materials.

3        SA Trombetta also testified that she was not an engineer, and she tracked the language in the

4    Declaration of EVP Pinto because his language describing the MOCVD technology had been

5    concise and to the point. She testified that she was trying to be accurate in her search warrant

6    affidavit. She testified that when she receives information from someone knowledgeable about a

7    certain area, she describes the subject matter in the same way it was described to her when drafting

8    an affidavit. SA Trombetta testified that that is what she did with the information she received

9    from EVP Pinto.

10   **II.    DISCUSSION**

11       **A.  Legal Standard**

12       To mount a successful *Franks* challenge, "the defendant must establish two things by a

13   preponderance of the evidence: first, that 'the affiant officer intentionally or recklessly made false

14   or misleading statements or omissions in support of the warrant[,]' and second, that the false or

15   misleading statement or omission was material, i.e., 'necessary to finding probable cause.'" *United*

16   *States v. Perkins*, 850 F.3d 1109, 1116 (9th Cir. 2017) (alteration in original) (quoting *United*

17   *States v. Martinez-Garcia*, 397 F.3d 1205, 1214–15 (9th Cir. 2005)). "If both requirements are

18   met, 'the search warrant must be voided and the fruits of the search excluded....'" *Perkins*, 850

19   F.3d at 1116 (quoting *Franks v. Delaware*, 438 U.S. 154, 156 (1978)).

20       Under the first step of *Franks*, "[a] negligent or innocent mistake does not warrant

21   suppression." *Perkins*, 850 F.3d at 1116 (citing *Franks*, 438 U.S. at 171). Under the second step of

22   *Franks*, "[t]he key inquiry is 'whether probable cause remains once the evidence presented to the

23   magistrate judge is supplemented with the challenged omissions.'" *Perkins*, 850 F.3d at 1119

24   (quoting *United States v. Ruiz*, 758 F.3d 1144, 1149 (9th Cir. 2014)). "Probable cause to search a

25   location exists if, based on the totality of the circumstances, there is a 'fair probability' that

26   evidence of a crime may be found there." *Perkins*, 850 F.3d at 1119 (citing *United States v. Hill*,

27   459 F.3d 966, 970 (9th Cir. 2006)).

28

United States District Court
Northern District of California

**B.     Intentional or Reckless Disregard for the Truth**

Defendant Olgado argues that the Government was on notice of the pending legal proceeding in which the TRO was denied by the declarations in opposition to the TRO and the stipulated TRO in the binder provided by Applied Materials. Defendant Olgado argues that the Government could have conducted additional investigation to find the result of the TRO, and by not doing so, the Government, as the federal authority, was sending the signal that the state court did not matter. Defendant Olgado argues that this was, at a minimum, reckless to not have investigated further.

The Government argues that there is no evidence that SA Trombetta intentionally omitted the fact that the TRO application was denied, so Defendant Olgado cannot meet his burden under the first *Franks* step. The Government argues that SA Trombetta consistently testified that she did not know about the denial of the TRO, and nothing in the search warrant affidavit is untruthful. The Government argues that the evidence supports SA Trombetta's testimony that she did not know about the denial of the TRO: Exhibit 3, SA Trombetta's report after the January 2013 meeting; Exhibit 4, her handwritten notes from the meeting; Exhibit 6, the letter from Defendant Olgado's counsel to counsel for Applied Materials; and Exhibit 7, the timeline of relevant documents from Applied Materials, all did not to mention the denial of the TRO.  Further, the Government argues that Defendants have not presented a single case that held an agent was reckless for not monitoring the civil docket in a civil case parallel to a criminal investigation. And finally, the Government argues that Defendant Olgado signed the stipulated TRO on December 17, 2012, which stayed the litigation between him and Applied Materials. Government Ex. 5. Therefore, the denial of the TRO on December 21, 2012, had no bearing whatsoever on Defendant Olgado. *See* Government Ex. 8. The Government argues that the status of the litigation as to the other Defendants is not relevant.

The Court agrees with the Government that Defendant Olgado has not met his burden of establishing was by a preponderance of the evidence that SA Trombetta knowingly and intentionally, or with reckless disregard for the truth, omitted the denial of the TRO from her search warrant affidavit. The Court agrees with the Government that the evidence in the record

13

United States District Court
Northern District of California

1  supports SA Trombetta's credible and consistent testimony that she did not know about the denial

2  of the TRO. The Court further agrees with the Government that there is no case law that

3  establishes that a criminal investigator has a duty to monitor a parallel civil lawsuit against related

4  Defendants when the Defendant whose property is at issue has stipulated to stay the civil litigation

5  against him.

6        The Court finds *Perkins* and *United States v. Stanert*, 762 F.2d 775, 781 (9th Cir. 1985),

7  *amended* 769 F.2d 1410 (9th Cir. 1985), distinguishable from this case. In *Perkins*, the Ninth

8  Circuit reversed a district court's decision in a *Franks* hearing that the investigating agent had not

9  deliberately or recklessly mislead the magistrate judge by omitting material information from the

10  warrant application. *Perkins*, 850 F.3d at 1112. In *Perkins*, the defendant had been arrested and

11  convicted for receipt of child pornography, but the investigating agent left out material details

12  from the earlier Canadian investigation regarding the same images used to obtain the search

13  warrant. *Id.* 1112-17. Specifically, the investigating agent omitted these material facts: "(1) the

14  fact that Canadian authorities dropped the child pornography possession charge against Perkins

15  because the images were not pornographic; (2) important portions of Constable Ullock's

16  description of the 989.jpg image; and (3) copies of the images." *Id.* at 1116. The investigating

17  agent also testified that he was aware of these facts when he submitted the search warrant

18  affidavit, and the Ninth Circuit found his testimony not credible. *Id.* 1116-17. The case in front of

19  this Court is distinguishable: the Court finds SA Trombetta's testimony credible, and the evidence

20  supports her testimony that she was unaware of the denial of the TRO. Even if she had been aware

21  of the denial of the TRO, the Court does not find this material as to the warrant to search

22  Defendant Olgado's home, as Applied Materials had already stayed the litigation as to him when

23  the state court judge denied the TRO.

24        *Stanert* is also distinguishable from this case. *Stanert* addresses what is required of

25  defendants for a preliminary showing to obtain a *Franks* hearing, but it does comment on the

26  burden Defendants must meet at the *Franks* hearing itself. 762 F.2d at 781. Further, the evidence

27  in *Stanert* suggested that the investigating agent was aware of the fact that the defendant had not

28  been convicted of any charge, a fact that was omitted from the warrant that mentioned that the

14

defendant had been arrested. *Id.* Here, all the evidence suggests that SA Trombetta was not aware of the denied TRO.

The Court finds that SA Trombetta's omission of the denial of the TRO was, at most, negligent, and therefore Defendants have failed to prove by a preponderance of the evidence that SA Trombetta's omission was intentional or made in reckless disregard for the truth.

### C.    Materiality

Since Defendants have failed to establish the first prong required for a successful *Franks* challenge, the Court need not reach the arguments on materiality. The Court does note that, even if the search warrant affidavit were supplemented with the denial of the TRO, the fact that Defendant Olgado was no longer a part of the litigation would have necessarily been included in order for the affidavit to accurately capture the status of the state court litigation.

### D.    Conclusion

The Court concludes that Defendant Olgado has not met his burden under *Franks* and established by a preponderance of the evidence that the challenged omission was intentional or made with reckless disregard for the truth.

## III.    ORDER

Defendants' motion to suppress evidence is DENIED.

Dated: March 26, 2021

_____
BETH LABSON FREEMAN
United States District Judge

15